# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Omar Scott, (B74206), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 13 C 08256 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ) | |
| Kim Butler, Warden, Menard ) | |
| Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Omar Scott, a prisoner at the Menard Correctional Center, brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging his 2008 murder conviction from the Circuit Court of Cook County, Illinois. Petitioner argues that: (1) the trial court denied his right to testify by refusing to rule on his motion *in limine* to bar the use of prior convictions for impeachment purposes; (2) ineffective assistance of appellate counsel for failing to raise several issues on direct appeal; and (3) the prosecutor improperly sought to inflame the passions of the jury by discussing the suffering of the victims and their families during closing argument. The Court denies the petition and declines to issue a certificate of appealability.

1.     **Background**

The following facts are drawn from the Appellate Court of Illinois's opinion on direct appeal. *Illinois v. Scott*, 401 Ill. App. 3d 585, 929 N.E.2d 124, 340 Ill. Dec. 820 (Ill. App. Ct. 2010). Following a jury trial, Omar Scott was convicted of first degree murder for the shooting death of Ike Steptore, and aggravated battery with a firearm for the injury partially paralyzing Gernard Fulton during an altercation at the Time Out Lounge at 8216 South Vincennes in Chicago, Illinois. 401 Ill. App. 3d at 586-87. Scott was also found guilty of felony unlawful use of a weapon by a felon during a simultaneous bench trial. *Id.* at 586.

At trial, victim Ike Steptore's wife, Cordelia, testified that Ike had gone to the Time Out Lounge for the birthday party of her brother, Roderick Love. *Id.* at 587. Shortly after 1 a.m., she received a call concerning Ike, and immediately went to the Time Out Lounge. *Id.* Ike was in an ambulance, but he was conscious and able to talk. *Id.* According to Cordelia, Ike referred to her by a nickname and said, "Dee Wee, I love you." *Id.* Ike underwent surgery, but later died due to his injuries. *Id.*

Victim, Gernard Fulton, also testified. *Id.* On the night of October 1, 2004, she met a friend at the Time Out Lounge for a drink. *Id.* Fulton observed a party going on in the back portion of the bar. She met and danced with Ike Steptore. *Id.* After dancing, as Fulton returned to her seat at the bar she noticed a commotion behind her, which sounded like two men arguing. *Id.* Fulton did not turn to look at the argument. *Id.* Instead, she decided to leave the bar. As she was about to put on her jacket, she "felt a hot sensation in [her] left back area" and fell down, without having heard gunshot. *Id.* Fulton was transported to hospital where she underwent surgery to remove a bullet and for a partially shattered spine, requiring spinal fusion. *Id.* at 588. Following the surgery, Fulton was paralyzed from the neck down. *Id.* The trial court permitted Fulton to testify about her injury, recovery, treatment, and ongoing limitations over defense counsel's objection. *Id.*

Ike's brother-in-law Rodrick Love also testified. He was at the Time Out Lounge on the night of the incident for a birthday party for another brother-in-law, Charles Tyler. *Id.* He and Ike shared a round of drinks. From his position about four to five feet from the dance floor, Love could see Ike arguing with another man. *Id.* Love did not know what precipitated the argument. *Id.* The situation escalated and Love approached. *Id.* Another individual, named "Rock," also approached. *Id.* The men began pushing and shoving, but due to Ike's size and positioning, Love could not tell who was doing what. Other patrons at the bar implored the men to quit arguing. *Id.*

2

Love did not know Omar Scott, but identified him as the "other guy" arguing with Ike. *Id.* According to Love, "I asked the other guy to let it go. I told him it was family." Scott responded, "it's no dam [sic] family of mine." *Id.* Scott then produced a dark colored handgun from the right side of his body, possibly from his pocket. *Id.* Love grabbed his arm and the gun discharged. Scott continued to try to raise his arm and the gun fired a second time. Then, Love and Rock "all came over with [their] full body weight. And the third shot went wild or whatever. And [petitioner] came underneath us and he ran for the door." *Id.* Love was unable to chase Scott because he was holding Ike, who was leaning against him. *Id.* at 589. Love yelled for the bouncers to stop defendant and called to his other brother-in-law that Ike had been shot. *Id.* The crowd in the bar began stampeding toward the front door. Some of the people were "trampling" and "jumping" over a woman who fell backwards and had blood coming from her head. *Id.*

Love stayed with Ike until the police and paramedics arrived. Ike lifted his shirt to show Love that he had been shot in the stomach. *Id.* Love remained at the bar after Ike was transported to the hospital. Thereafter, he spoke with investigators, gave a statement to an assistant State's Attorney, and identified defendant in a lineup. *Id.*

Dwayne Betts, an off duty Chicago police sergeant, testified that he was at the Time Out Lounge the early morning hours of October 2, 2004, where he met up with another Chicago police officer, then-Sergeant Eddie Johnson. *Id.* Just as he received his drink order, Betts heard a commotion, consisting of fighting and yelling, coming from the dance floor. *Id.* He had only been at the bar for about 10 minutes. As the DJ announced last call, three gunshots rang out in rapid succession. *Id.* According to Betts, "pandemonium erupted in the lounge." *Id.* Betts exited the bar along with the crowd. Once outside, he waited for Johnson to exit. Betts asked another patron, Mike Kraft or "Shug," if he knew the shooter. *Id.*

3

Based on Shug's response, Betts proceeded northbound down Vincennes. *Id.* He saw Scott walking alone at a fast pace. *Id.* Betts increased his pace, announced his office, and yelled for Scott to stop. *Id.* Scott continued walking away and Betts saw him toss a dark metallic object that he believed to be a handgun to a grassy area by the sidewalk. *Id.* Betts got him onto the ground. A uniformed officer arrived, provided handcuffs, and Scott was placed in custody. Betts then located the gun Scott tossed in the adjacent grassy area. *Id.*

The judge and jury found Scott guilty, and he was sentenced to 78 years of imprisonment. *Id.* at 17, 23. The Illinois courts affirmed his conviction on direct review, and rejected his post-conviction petition. The state court findings are presumed correct, and Scott has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. 2254(e)(1)). Scott provides no evidence to rebut the state court findings. He now brings the present habeas corpus petition.

**2.      Petitioner's Claims**

    **A.      The AEDPA Standard**

A writ of habeas corpus cannot issue unless petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). As the state courts adjudicated Scott's claims on the merits, the Court's review of the present habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d).

"'A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Premo v. Moore*, 562 U.S. 115, 128 (2011) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "An 'unreasonable application' occurs when a state court 'identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of Petitioner's case.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (opinion of O'Connor, J.)).

Clearly established federal law is the "'holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict the Supreme Court standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citations omitted). This presumption is especially strong when the state court is considering well established legal principles that have been routinely applied in criminal cases for many years. *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

The Court's analysis is "backward looking." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). The Court is limited to reviewing the record before the state court at the time that court made its decision. *Id.* The Court is also limited in considering the Supreme Court's "precedents as of 'the time the state court renders its decision.'" *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (quoting *Cullen*, 562 U.S. at 182; *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (emphasis omitted).

5

"The AEDPA's standard is intentionally 'difficult for Petitioner to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 134 S. Ct. 1702 (2014); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen*, 563 U.S. at 181 (quoting *Woodford*, 537 U.S. at 24).

**B.   Claim One:   Denial of Petitioner's Right to Testify**

Scott argues that the trial court erred by reserving ruling on his motion *in limine* to bar the use of his prior convictions for impeachment purposes until after hearing Scott's testimony. Scott asserts that his constitutional right to choose whether to testify was unnecessarily impinged upon by the trial court's policy of reserving ruling on motions *in limine* of this type.

**1.   Respondent's Precedural Default Argument**

In order to receive federal habeas relief, a state prisoner must have properly presented his claims in the state court. *Johnson v. Pollard*, 559 F. 3d 746, 751-52 (7th Cir. 2009). A federal court will not review the merits of a habeas claim if the state court considered the issue and its decision rested on a state ground independent of the federal question and adequate to support the judgment. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1316, 182 L. Ed. 2d 272 (2012); *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002).

A federal court may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Excuse for cause means, "an objective factor, external to the defense, that impeded

6

the defendant's efforts to raise the claim in an earlier proceeding." *People v. Britt-El*, 206 Ill. 2d 331, 794 N.E.2d 204, 209, 276 Ill. Dec. 309 (2002). Prejudice means, "an error which so infected the entire trial that the resulting conviction violates due process." *Id.*

Here, the Illinois Appellate Court on direct review held that Scott's failure to testify precluded the court from reviewing the propriety of the trial court's reserving ruling on the motion *in limine*. *Scott*, 929 N.E.2d at 134-35. The appellate court based its ruling on established Illinois precedent, *People v. Averett*, 237 Ill. 2d 1, 927 N.Ed. 2d 1191, 340 Ill. Dec. 180 (2010), finding that Scott's failure to testify "standing alone, is sufficient for us to abstain from reviewing defendant's claim of error." *Scott*, 929 N.E.2d at 136. Thus, the Illinois Appellate Court's denial of Scott's claim was based on independent and adequate state procedural grounds and the claim is procedurally defaulted.

Scott does not argue nor can he show that this Court should excuse the procedural default for cause or prejudice. Likewise, Scott does not assert he is actually innocent and nothing in the record would support a finding that the trial court's reserving ruling on Scott's motion *in limine* resulted in a fundamental miscarriage of justice. *See Spreitzer v. Schomig*, 219 F.3d 639, 648 (7th Cir. 2000) (failure to show evidence of cause or actual innocence results in procedural default).

### 2. The Merits of the Claim

Petitioner has the burden of showing that he is being held in violation of his constitutional rights, and that he is entitled to relief under the demanding AEDPA standard. 28 U.S.C. § 2254(a); *Cullen*, 563 U.S. at 181. He has not met this burden.

The decision of the Appellate Court of Illinois from Scott's direct appeal is the relevant state court decision that this Court reviews since it was the last state court decision to evaluate petitioner's claim on the merits. *Stern v. Meisner*, 812 F.3d 606, 609 (7th Cir. 2016) (citations omitted). Petitioner is not entitled to relief because the state appellate court decision is neither contrary to, nor an

unreasonable application of, clearly established federal law. Indeed both the trial court in reserving its ruling and the Illinois Appellate Court referred to *Luce v. United States*, 469 U.S. 38, 43 (1984), in which the Supreme Court held that a defendant must testify in order to raise a claim of improper impeachment with a prior conviction. Accordingly, the state court's finding that Scott must have testified at trial to render the issue of his prior convictions reviewable was consistent with established federal law as was the trial court's decision to reserve ruling on the motion *in limine* until Scott testified.

C. **Claim Two (a)-(f): Procedural Default: Petitioner's Ineffective Assistance of Appellate Counsel Claim**

Petitioner's other claim is that his appellate counsel was ineffective on direct appeal for failing to raise the following issues: (a) trial counsel's ineffectiveness for failure to challenge the trial court's "ambiguous or unclear" *voir dire* admonishments; (b) trial counsel's ineffectiveness for failure to impeach State witnesses; (c) trial counsel's ineffectiveness for failure to investigate the crime scene and certain medical evidence; (d) trial counsel's ineffectiveness for failure to move to dismiss the charges based on delay between his arrest and his preliminary hearing; (e) violation of his "right to be present for all parts of his trial"; and (f) he was not proven guilty beyond a reasonable doubt.

Scott's ineffective assistance of counsel claims are procedurally defaulted because he failed to present them through one complete round of state court review either on direct appeal or in post-conviction proceedings. *See* 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004). Scott only raised the claims listed above in his *pro se* post-conviction petition in the Circuit Court of Cook County, the summary denial of which he appealed on the sole basis of that the prosecutor improperly sought to inflame the passions of the jury during closing argument by discussing the victims' suffering (Claim Two (g)). *See* Dkt. 20-7, Appellant's Brief on Post-Conviction Review. Scott must have exhausted state court review to preserve these claims for

8

federal habeas review. Scott does not argue and the record before the Court shows no excuse for Scott's procedural default through cause and prejudice, or fundamental miscarriage of justice.

**D.      Claim Two (g): Merits of the Claim**

The only post-conviction claim that Scott adequately preserved for habeas review is his assertion that his appellate counsel was ineffective for failing to argue direct appeal that the prosecutor improperly sought to inflame the passions of the jury by making arguments during closing arguments regarding the suffering of the victims and their families. On appeal from the summary dismissal of Scott's *pro se* post-conviction petition, the Illinois Appellate Court affirmed, holding that the trial court did not err because the remarks of the prosecutor did not cause substantial prejudice where the evidence was overwhelming.

Scott claims the prosecutor made two improper statements to the jury during closing arguments that his appellate counsel should have raised on direct review. First, Scott argues that the prosecutor improperly appealed to the jurors' sympathy for the victims' families with the following statement: "This isn't about sympathy. This is about justice. This is about loved ones being affected by a man who took a gun to solve a problem that should have never, ever been used to solve that problem." Second, Scott argues that the prosecutor improperly sought to inflame the jurors' passions by asking them to deliberate with the same speed that Scott allegedly used to commit the crime by stating: "[I]f you deliberate for five minutes and come back with a verdict of first degree murder, you would have given this man probably four minutes plus more consideration of him… than he gave Ike Steptore."

The *Strickland v. Washington* standard governs ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). "Appellate counsel is not required to present every non-frivolous claim on behalf of her client. This process of 'winnowing out

9

weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (internal citations omitted). Limiting an appeal to the strongest issues is a valid exercise of strategy. *See United States v. Stokes*, 726 F.3d 880, 887 (7th Cir. 2013) (cautioning against taking a "shotgun" approach of raising every possible claim on appeal as doing so runs the risk of distracting the reviewing court from the most important issues). Appellate counsel's performance is deficient under *Strickland* only if he fails to argue an issue that is both "obvious" and "clearly stronger" than the issues that counsel did argue on appeal. *Makiel,* 782 F.3d at 898 (citing e.g., *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010); *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003)). The comparative strength of two claims is usually debatable, making it difficult to prove that an unraised claim is clearly stronger than a claim that was raised. *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013).

On direct appeal, counsel argued two issues: (1) whether the court deprived Omar Scott of his right to knowingly exercise his right to testify when, applying an improper blanket policy, it refused to rule on his pre-trial motion to preclude the introduction of prior conviction for impeachment purposes unless and until he testified; and (2) whether the introduction of irrelevant and prejudicial evidence, including testimony by the decedent's wife that his last words were, "I love you," and testimony by another victim detailing the extensive physical therapy she underwent and the social impact she suffered due to the incident, violated Omar Scott's right to a fair trial. Dkt. 20-2, Appellant's Brief at *2. While the impropriety of the prosecutor's comments is arguably obvious, the claim is not clearly stronger than the two issues that counsel argued. Indeed, the appellate court upon considering the issue on post-conviction appeal found the claim of prosecutorial misconduct did not rise to the level of reversible error.

Appellate counsel's failure to raise the issue did not result in prejudice to Scott since the issue was raised in his post-conviction ineffective assistance of counsel appeal. The Illinois Appellate Court fully considered and rejected the issue on its merits as part of its ineffective assistance analysis. *Illinois v. Scott*, 2013 IL App (1st) 112304-U, *P77 (Aug. 16, 2013). The Illinois Appellate Court reasoned that:

> "[a]lthough some of the prosecutor's remarks may have come close to the impermissible line, neither of [Scott's] arguments persuade us that [Scott] suffered substantial prejudice from the remarks in light of the overwhelming evidence. First, the prosecutor did not make an improper remark when he said 'This isn't about sympathy, this is about justice,' because defense counsel invited the remark by introducing discussion of sympathy in her closing. Moreover, '[i]t is entirely proper for the prosecutor for the prosecutor to dwell upon the evil results of crime and to urge fearless administration of the law." *Id.* at *P73.

The court further held that, though the prosecutor did make an emotional appeal when referring to the victims' families, the jury deliberated for at least an hour and the evidence was overwhelming, indicating that the verdict did not result from the prosecutor's closing remarks. *Id.* at *P75-76. Thus, this Court can infer from the appellate court's opinion that it would also have rejected the argument had it been raised on direct appeal since both courts referred to the "overwhelming" evidence against Scott. *See e.g., Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996). "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Id.* We therefore conclude, as did the state appellate court, that Scott was not prejudiced by his counsel's failure to pursue the issue on direct appeal.

**E.    Claim Three: Prosecutor's Improper Closing Argument**

    **1.    Respondent's Precedural Default Argument**

Scott's third claim is that the prosecutor improperly sought to inflame the passions of the jury by discussing the suffering of the victims and their families. Respondent argues that this claim is

11

procedurally defaulted because Scott did not argue the issue through one complete round of state review.

In order to preserve arguments for habeas review, a petitioner must have raised the issue through a complete round of state court review either directly or collaterally in post-conviction proceedings. 28 U.S.C. § 2254(b)(1); *Baldwin*, 541 U.S. at 29; *Gray v. Hardy*, 598 F.3d 324, 327 (7th Cir. 2010). In this case, Scott raised a claim in post-conviction proceedings that his appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor made improper arguments in closing at trial. However, Scott did not argue at any stage, until his federal habeas petition, the underlying prosecutorial error as a separate claim for relief. Ordinarily, an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of the underlying issues. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). The Seventh Circuit has identified an exception to *Lewis*, in *Malone v. Walls*, holding that federal habeas review is not precluded in circumstances where it is clear that the petitioner raises ineffective assistance of appellate counsel as a means for the court to excuse procedural default and reach a claim for ineffective assistance of trial counsel. 538 F.3d 744, 755 (7th Cir. 2008). Put another way, the petitioner is asserting that the ineffective assistance of his appellate counsel is the cause, excusing his failure to raise an ineffective assistance of trial counsel claim. *Id.*

The situation in this case does not mimic the circumstances in *Malone*. It is undisputed that Scott failed to raise an independent claim based on the prosecutor's comments during any state court review. Moreover, the record shows that his trial counsel made contemporaneous objections to the prosecutor's closing remarks regarding the victims' families. Scott makes no argument as to what more his trial counsel could have done and thus his claim of ineffective assistance of appellate counsel is not a mechanism for excusing a failure to raise the underlying claim. Scott therefore procedurally defaulted

12

the prosecutorial misconduct claim. The record reveals no evidence, and Scott presents none, to support cause and prejudice excusing the default or miscarriage of justice. Accordingly, this Court need not reach the merits of the claim.

**F.      Certificate of Appealabilty**

The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner Scott cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of this case. *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.   *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed.

R. App. P. 4(a)(4)(A)(vi).

**G.    Conclusion**

Petitioner's habeas corpus petition [1] is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner. On the Court's own motion, Respondent Rick Harrington is terminated. Kim Butler, Warden, Menard Correctional Center, is added as Respondent. The Clerk shall alter the case caption to *Scott v. Butler*. Civil Case Terminated.

ENTERED:

Dated: June 17, 2016

_____
SHARON JOHNSON COLEMAN
United States District Judge